IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                    NO. 10-CR-1006 JC

JORGE ERALDO AISPURO-ARISTIGUE,

        Defendant.


**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

THIS MATTER came before the Court on Defendant's Motion to Suppress (Doc. 33) ("Motion"). The issues for resolution are whether probable cause existed for Defendant's arrest and whether the post-arrest statements Defendant made were knowing, intelligent and voluntary. I considered the Motion, the government's Response thereto, and held an evidentiary hearing at the close of which I denied the motion orally. I now enter this Memorandum Opinion and Order incorporating my essential findings and recording them for the record as required by Fed.R.Crim.P. 12(d).

**I.     Findings of Fact**

As a preliminary matter, the Court finds that the hearing testimony from Agent Jarrell Perry, Sergeant Rudy Villarrael, and Agent Kevin Small was credible. On March 22, 2010, at approximately 2:50 p.m., Agent Jarrell Perry of the Drug Enforcement Administration was at the Albuquerque bus station to meet the northbound bus traveling from El Paso to Denver in furtherance of his drug interdiction efforts. Perry observed the passengers de-board and noticed

a male subject, now known to be Codefendant Villanueva, walk into the station carrying a small black satchel but no luggage. Perry observed that Villanueva's shoes were bulging on top. Perry knew from his extensive training and experience that shoes bulging in this manner may contain illegal drugs.

Perry approached Villanueva from the rear, showed his badge and credentials, and asked permission to speak with Villanueva. During the conversation, Villanueva said he was going to Wendy's restaurant (near the station) and he lived in Mexico. Perry soon requested consent to search Villanueva's person for contraband and discovered a tape-wrapped bundle appearing to be narcotics in Villanueva's shoes. As Perry was taking out his handcuffs to arrest Villanueva, he ran. Perry caught him and at that time Sandoval County Sheriffs' Deputy Villarael, who was off duty at the bus station on personal business, identified himself and offered to assist. Perry handcuffed Villanueva. Villanueva told the agents he was fluent in Spanish so Villarael, a fluent Spanish speaker, read him his *Miranda*[1] warnings in Spanish. Villarael informed the agents that he understood the warnings. Villanueva subsequently told the agents that he was supposed to deliver the shoes to a person in Albuquerque, he would be paid $1,000 for doing so, and he was to be contacted directly on the black Nextel phone he had with him by the Albuquerque person who would be picking him up. The agents looked at the phone and saw a missed direct-connect call number. They instructed Villanueva to call the number and arrange the pick-up as planned.

By this time, Agent Small had arrived on the scene. Villanueva called the direct-connect number from the cell phone and the person he called advised that he would pick Villanueva up in

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 467-74 (1966) (requiring that prior to custodial interrogation, a suspect be informed of the right to remain silent; that any statement he makes may be used as evidence against him; that he has the right to the presence of an attorney; and that he has the right to appointed counsel if he cannot afford to retain counsel).

a few minutes. Agents Perry and Small placed the shoes back on Villanueva's feet, having removed the drugs. Villanueva was handcuffed in front and the agents were able to conceal the handcuffs. They instructed Villanueva to approach the vehicle when it arrived but not to get inside the car. The agents then hid close by. A few minutes later, a brown Chevy Malibu pulled up behind Agent Small's vehicle along the curb near the bus station. There were no other people or vehicles (except Agent Small's) in the general vicinity at that time. Villanueva indicated to the agents that the Malibu was there to pick him up. Villanueva approached the vehicle, which was still running, and conversed with the male driver, now known as Defendant Jorge Eraldo Aispuro-Aristigue ("Defendant") who brings the present Motion.

Villanueva attempted to enter the vehicle on the passenger's side and the agents descended. The agents moved in quickly and forcefully because (1) the vehicle's engine was running and the suspects could flee; and (2) they were reasonably fearful that the driver could be armed because in their training and experience they have learned that where drugs are involved, weapons are often present. Agents Perry and Small physically removed Defendant from the vehicle and Agent Perry handcuffed Defendant, placing him under arrest.

Both Defendants were taken to the Albuquerque District Office of the Drug Enforcement Administration where they were searched and placed in temporary holding cells. Sergeant Villarael, in the presence of Agent Perry, read Defendant his *Miranda* rights in Spanish directly from a DEA form 13a prior to asking Defendant any questions. Defendant said he understood his rights and was willing to answer questions. The questioning took place in an interview room. There were two interviews conducted and two agents present during each. The *Miranda* warnings were read to Defendant in Spanish a second time prior to the second interview. The agents made no threats and Defendant appeared calm during both interviews. Defendant spoke

in a quiet voice when he answered questions, the tone was conversational and at no time did Defendant indicate that he wished to stop the conversation or speak with an attorney.

During the course of the interviews, Defendant made statements he now seeks to have suppressed from trial of this matter. In his Motion, Defendant argues that (1) his arrest was not supported by probable cause and (2) the waiver of his protections under *Miranda* was not voluntary, knowing or intelligent.

### III.   Discussion

#### A.   Probable Cause Existed at the Time of the Arrest

As a general rule, a warrantless arrest is constitutionally valid when an officer has probable cause to believe the arrestee committed a crime. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). "An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Munoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) (quotation omitted). "Probable cause to arrest does not require facts sufficient to establish guilt, but does require more than mere suspicion." *Id.* (quotation omitted). Of course, mere presence at the scene of a crime, without more, is insufficient to create probable cause. *See United States v. Najera*, 165 Fed. Appx. 700, 704 (10th Cir. 2006).

The Supreme Court has stated that a tip from a reliable informant, in conjunction with police corroboration, is sufficient to establish probable cause to arrest. *McCray v. Illinois*, 386 U.S. 300, 304, 87 S. Ct. 1056 (1967). After evaluating the totality of the circumstances and the particular facts known to law enforcement at the time of Defendant's arrest here, the Court finds that credible testimony from Agents Perry and Small establishes that the information from Co-

Defendant Villanueva, together with its independent corroboration by law enforcement, was sufficiently reliable and trustworthy to form the basis of the probable cause determination to arrest Defendant Aispuro-Aristigue.

Villanueva, an informant, told Perry that the arrangement was for someone to pick him up at the bus station and that person would first contact him via the black Nextel cell phone, using a "direct connect" feature. Indeed, while interacting with agents, Villanueva missed a direct-connect call and the caller was then shown to be the person who would pick up Villanueva. Villanueva had just been intercepted with a distributable amount of drugs on his person and was expecting to be paid $1000 to deliver the drugs to a person in Albuquerque.

That Villanueva implicated himself in the scheme tended to render the information he provided more reliable than it might otherwise be. *See United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interest, carry their own indicia of credibility–sufficient at least to support a finding of probable cause to search."). Further, the fact that the agents knew Villanueva's identity increased the likelihood that his information was credible because the agents could "hold him responsible if his allegations turned out to be fabricated." *United States v. Jenkins*, 313 F.3d 549, 554 (10th Cir. 2002).

In sum, the totality of the circumstances known to law enforcement was such that a reasonable officer would believe that Aispuro-Aristigui was committing or had committed a crime. *See United States v. Gordon*, 173 F.3d 761 (10th Cir. 1999) (declining to fundamentally alter the nature of the probable cause requirement from one based on a reasonably fair likelihood of criminal conduct to one satisfied only upon a positive showing of criminal conduct). In this case, probable cause rested, as it must, on a reasonable probability that a crime was being committed, albeit not on certainty that illegal activity was afoot. Accordingly, Aispuro-

Aristigue's arrest was constitutional.

### B. Defendant Knowingly, Intelligently and Voluntarily Waived His Rights Under *Miranda*

A waiver of *Miranda* rights must be made "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. "'[T]he relinquishment of [such rights] must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135 (1986)  "[T]he waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*.

Here, it is unclear whether Defendant Aispuro-Aristigue intends to argue that his waiver was not knowing and intelligent or if, instead, he contends that it was not voluntary.  Whether or not Defendant understood his *Miranda* protections is a question of fact which informs the legal question of whether his waiver was knowing and intelligent.  *See Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000) (citations omitted).

Regarding any challenge by Defendant to knowing and intelligent aspects of his waiver, there can be no reasonable dispute – given the uncontroverted evidence at the hearing –  that Defendant was twice read a correct translation of his rights in Spanish; Defendant affirmatively communicated that he understood those rights; and Defendant knowingly and intelligently waived those rights when he spoke to law enforcement following his arrest on March 22, 2010. Further, given the totality of the circumstances, which includes no evidence of any threats, weapons, intimidation, or coercion that might create a coercive environment, the Court finds no support in law for suppression of the post-arrest statements made by Defendant Aispuro-Astigue on the basis that the waiver was not voluntary.

## IV.     Conclusion

Considering the totality of the circumstances present and known to the law enforcement officers, probable cause existed to arrest Defendant Aispuro-Astigue based upon the information from confidential informant Villanueva and the subsequent corroboration of that information. Moreover, the Court finds no sufficient basis upon which it might find that Defendant's waiver of *Miranda* rights was anything other than knowing, intelligent and voluntary.  Accordingly, Defendant's Motion is denied.

WHEREFORE,

**IT IS ORDERED that Defendant's Motion to Suppress, filed June 9, 2010 (Doc. 33) is DENIED.**

Dated November 17, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE